to preferences.   This action is for money claimed to be due the plaintiff for services, and at the commencement the plaintiff obtained an attachment.   When at issue, the plaintiff served a notice of trial for the first Monday, or 2d day of October, 1899, and put the action on the general calendar.   After service of such notice of trial, and on the 3d day of October, 1899, he served an affidavit and notice of motion for the 5th day of October, wherein he stated that he would apply for an order placing his action upon the preferred calendar.   Having first denied, the learned judge subsequently granted, the motion; and thereafter, upon the ground that a memorandum in opposition to the motion, through inadvertence, had not been handed to the judge, a motion for reargument was made, which was denied.   It is from the two orders entered in accordance with the disposition made of the motions—one placing the action on the preferred calendar, and the other denying a reargument—that this appeal is taken.

The fact appearing that an attachment had been issued, and property of the defendant held thereunder, the action was entitled to a preference, under rule 36 of the general rules of practice, if a motion therefor was made in time.   As said in Marks v. Murphy, 27 App. Div. 160, 50 N. Y. Supp. 622:

"Section 793 of the Code of Civil Procedure provides that in this county a party desiring a preference of any cause shall serve upon the opposite party, with his notice of trial, a notice that an application will be made to the court, at the opening thereof, for leave to move the same as a preferred cause. It is the settled practice in this district that such an application must be made at the commencement of the term for which the notice of trial is served.   If not so made, the right to a statutory preference is waived.   In the present case the plaintiff should have moved for a preference upon the first Monday of January.   His notice of trial was for that day, and he could apply for such a preference upon no other day.   An application for a preference upon the following day was not authorized by the statute.   It follows that by his failure to move upon the first Monday of January he waived his statutory right.   His subsequent notice of trial for the February term was futile to avoid the effect of this waiver, or to support another application for a statutory preference."

The rule thus enunciated is conclusive upon the question here presented as to the proper calendar practice in the county of New York.   In accordance with it, the plaintiff should have served with his notice of trial for the first Monday of October a notice that he would make an application to the court at that time for a preference.   As he did not do this, the order below was erroneous, and should be reversed, with $10 costs and disbursements, and the motion for a preference denied, with $10 costs.   All concur.

---

WOODBRIDGE v. FIRST NAT. BANK OF SARATOGA SPRINGS.

(Supreme Court, Appellate Division, Third Department.   November 15, 1899.)

1. BANKS—DEPOSITS—TRUST FUNDS.
    Where an executor deposited money belonging to his decedent's estate in a bank in his own name, there is no contractual relation created with the estate, making the bank liable to account to the estate for moneys deposited.

**2. SAME—DEPOSITOR'S RIGHT TO WITHDRAW.**

A bank, in the absence of notice of an adverse claim, has the right to assume that a person depositing money to his own credit has a right to withdraw it.

**3. SAME—ACCOUNTING—BURDEN OF PROOF.**

In an action by a trustee against a bank to compel it to account for moneys of the estate deposited by a former executor in his own name, which the bank paid out in discharge of such executor's personal obligations, with knowledge that they were trust funds, it is not error to refuse an accounting, where plaintiff failed to show that all or any certain part of the deposits belonged to the estate.

**4. SAME.**

Where testator bequeathed an annuity to his daughter for life, and both she and her husband, with the executor's consent, collected moneys belonging to the estate, not exceeding the amount of the annuity, and deposited it in a bank to his personal credit, the bank, having notice of the facts, was entitled to assume that such moneys were received by the husband as the beneficiary's agent, to apply on the annuity, and hence cannot be required to account therefor to the estate.

**5. SAME—ACCOUNTING—COSTS—EXTRA ALLOWANCE.**

In an action for an accounting of trust funds claimed by plaintiff to have been received by defendant, the amount claimed being greatly in excess of the sum proven to have been received by defendant, and for which he ought to account, the latter amount is to be deemed the value of the subject-matter involved, in determining the amount of an extra allowance of costs.

Appeal from special term, Saratoga county.

Action by Helen F. Woodbridge, trustee, against the First National Bank of Saratoga Springs. From a judgment dismissing the complaint, and from an order granting defendant a special allowance of costs, plaintiff appeals. Judgment affirmed, and order modified.

In December, 1870, Samuel Freeman died, leaving a will, afterwards duly admitted to probate, in which, after some specific bequests, the testator gave all the rest of his property to the executor thereinafter named, and to his successor, in trust to receive the rents and profits and annual avails, and pay therefrom to his only daughter, Helen Woodbridge, the wife of John Woodbridge, during her life, the annual sum of $3,500, in semiannual payments; at her decease, the trust fund and property to go and belong to her child or children, if more than one, in equal parts; in case his daughter died leaving no child or descendants, then the trust fund and property to go to his next of kin and heirs at law. Power was given to the daughter to dispose of, by will, one-half of the property. Augustus Bockes was appointed executor and trustee, on condition that he accept the trust at an annual compensation of $500, in full of all claim for labor, expenses, and commissions as executor and trustee. The trustee was authorized to sell any of the real estate, with the written consent of the daughter. Bockes accepted the trust, and letters testamentary were issued to him on December 24, 1870, and he thereupon entered upon the performance of his duties as executor and trustee. On the 28th June, 1872, he gave to John Woodbridge a power of attorney, authorizing him to collect and receive all moneys due or to become due to the executor and trustee as such, and to take possession of all the property belonging to the estate, and to use, manage, and control the same. It was stated in the power of attorney that it was given with the sanction and approval of Mrs. Woodbridge, and that the attorney was to be deemed her agent and attorney in all matters and things to be done thereunder; and a writing to that effect, and signed by her, was attached. On the 9th June, 1894, Bockes, by permission of the court by order of that date, resigned his trust as such executor and trustee; and the plaintiff, Helen F. Woodbridge, the daughter of the deceased, was appointed trustee in his place. This action was commenced on May 10,

1897. In the complaint, among other things, it is alleged that between June 28, 1872, and April 6, 1876, the defendant received from John Woodbridge, in divers amounts, the sum of $61,102.42, moneys belonging to said estate and trust, placing the same to the credit of the account of Helen F. Woodbridge, of which account said John had control, which moneys so deposited with defendant the defendant thereafter negligently and wrongfully permitted the said John to withdraw from said bank and to convert to his own use, or which moneys, or some part thereof, were thereafter converted by the defendant to its own use, being applied by the defendant to the payment of personal indebtedness owing to the defendant by the said John; that on April 6, 1876, said John opened a personal account in his own name with the defendant, and thereafter, between the dates of April 6, 1876, and June 8, 1894, the defendant received on deposit to the credit of said John moneys of said estate amounting in the aggregate to $161,653.12, which moneys, or some part thereof, the defendant wrongfully and unlawfully permitted said John to convert to his own use by withdrawing the same from the bank, or which moneys, or some part thereof, the defendant converted to its own use in satisfying personal debts owing to it by said John, the amounts of which were unknown to plaintiff; that all such moneys were known to defendant to be owned by said estate, and impressed with said trust. The defendant, among other things in its answer, admits having an account at its bank, with Helen F. Woodbridge and with John Woodbridge, but denies the allegations of its receipt of moneys of the trust estate, and also the allegations of conversion or misappropriation by it, or with its permission, of any of the trust property. Upon the trial, at the close of the evidence, the defendant moved for a dismissal of the complaint on the ground that the plaintiff had not made out a cause of action, and thereupon the court made a decision, in which it was decided "that plaintiff has failed to prove that there has been any conversion or misappropriation of any part of the trust estate by the defendant, or the trustee, Augustus Bockes, or by John Woodbridge, or by any other person; that plaintiff has failed to prove that defendant had knowledge of any wrongful use of the said trust property, or of any intent to misappropriate any part thereof, on the part of the said trustee, Augustus Bockes, or John Woodbridge, or any other person; that the complaint should be dismissed upon the merits." Judgment was directed accordingly, with costs.

Argued before PARKER, P. J., and LANDON, HERRICK, and MERWIN, JJ.

Appleton D. Palmer, for appellant.

Esek Cowen and John L. Henning, for respondent.

MERWIN, J. The main contention of the appellant is that a case was made entitling the plaintiff to an interlocutory judgment requiring the defendant to account for all moneys belonging to the estate of Samuel Freeman, deceased, at any time received by the defendant. There was no contract relation between the defendant and the estate, such as would make it the duty of the defendant to account to the plaintiff. The cases, therefore, that are cited with reference to the duty to account where the relation of the parties is based on contract, do not apply. The contract dealings here were between the defendant, on the one part, and Helen F. Woodbridge, or John Woodbridge, on the other. The relation was that of debtor and creditor. The duty of the defendant was to pay to the party depositing, or to his or her order. It did so. John Woodbridge had authority to act for his wife. A bank, in the absence of notice of an adverse claim, has the right to assume that the person who makes deposits to his own credit has the right to draw them out. A court of equity may order an accounting when a fiduciary

relation exists between the parties, and a duty rests on the defendant to render an account. 3 Pom. Eq. Jur. § 1421. And this rule may be applicable in case of a constructive trust. 1 Story, Eq. Jur. § 612. The existence of such trust, or the facts upon which it may arise by operation of law, must be definitely shown, before the right to recover or to require an account is established. John Woodbridge was, as the defendant knew, or is chargeable with knowing, the agent of the trustee in the collection of the moneys of the estate. The plaintiff concedes that Woodbridge had the right to collect, but claims that he had no right to deposit his collections in the bank to his own credit. Assume this position to be correct; it would be incumbent on the plaintiff to show either that all the deposits were estate moneys, or to show what deposits were such. It is not shown that all were moneys of the estate. On the contrary, it is shown that other moneys were deposited, and the amount thereof that belonged to the estate is not shown. Because Woodbridge was, to defendant's knowledge, agent of the trustee, and made some deposits that consisted of trust moneys, it does not follow that the burden is on the defendant of showing what of the deposits belonged to the estate, or of showing that the whole went for the benefit of the estate. It will hardly do to put onto a bank the burden of showing where its customer gets his deposits. The plaintiff, with the access to papers and records which she is supposed to have, should in the first instance show what deposits were estate moneys. This is done as to certain dividends or bank stock held by the estate in the defendant bank and in a Schenectady bank. Those dividends were a part of the annual income of the trust fund, and were less than the annuity payable to Mrs. Woodbridge. The defendant had a right to believe that such dividends were rightfully received by Mrs. Woodbridge, or her husband as her agent, to apply on her annuity; and therefore no misappropriation or negligence can be charged to the bank on that account. No other specific deposits are shown as coming from the trust estate. It is alleged that the individual debts of Mr. Woodbridge were paid from the estate funds. The evidence, to say the least, leaves that in doubt; but, if there were such payments, the amount does not appear. There is nothing in the evidence from which the trial court could properly say that the defendant must pay or account for any particular sum, or any particular item of property. This is not the case of the management of an estate by a party having no right to do so, or the case of the use of property, the profits from which may be reached, and therefore a right to an accounting may exist. The question is whether the defendant has improperly allowed the moneys of the trust estate, known to be such, to be withdrawn from the bank, or has itself improperly received, to its own benefit, such moneys. The claim is, in its nature, tortious, and should be shown with reasonable certainty. The deposits seem to have been made and paid out in the ordinary course of business, from 1872 to 1894, without any adverse claim, until the commencement of this suit. It is not shown to what extent during this period the principal of the estate has been diminished. So far as the case shows, the defend-

ant had the right to believe that the estate, though practically in the hands of John Woodbridge, was managed to the satisfaction of all parties up to the time of the resignation of the trustee, in 1894. It had a right to believe that whatever deposits of estate moneys were made by Woodbridge to the credit of his wife or himself were so made with the assent of the trustee, and without any design on the part of either the trustee or of Woodbridge to misappropriate the same.

We are not persuaded that, upon the case presented, the plaintiff was entitled to an interlocutory judgment for an accounting. The trial court, in effect, found that no conversion or misappropriation by the defendant had been shown, or any negligence or improper conduct on its part in regard to any withdrawal of trust funds by Woodbridge from the bank. We find no good reason for disturbing this conclusion, or the conclusion that a cause of action was not established.

Upon the appeal from the order granting an extra allowance of costs, it is claimed by the plaintiff that there is no basis in the case for granting an allowance. The allowance must be based "upon the sum recovered or claimed, or the value of the subject-matter involved." The plaintiff, in her complaint, asked judgment that the defendant be required to account, and pay to the plaintiff all moneys of said estate found due upon such accounting, and for such other or further relief as might be proper. The argument is that the subject-matter of the action is the right to an accounting, and that no money value can be placed upon that, and therefore there is no basis for an allowance. The subject-matter of the action was the deposits of trust moneys during the period in controversy. Under the allegations of the complaint, a recovery was possible to the full amount alleged. The amount or value of such deposits, however, was not proved, except to the extent of about $30,000, being the dividends of certain banks. That sum, therefore, is to be deemed the value of the subject-matter involved. The order granted an extra allowance of $2,000. This was larger than the facts of the case, as appearing from the papers on which the order was granted, warranted. It should be reduced to the sum of $1,000, and the order as so modified should be affirmed. Judgment affirmed, with costs.

Order modified by reducing the allowance to the sum of $1,000, and as so modified affirmed, without costs. All concur. ,